### Francis Egan, Adm. de bonis non, etc., v. Mima B. Clark.

1. ADMINISTRATION OF ESTATES—*Duty of Administrators.*—It is the duty of an administrator to attempt to collect the debts apparently due the estate, and not to resist their collection by setting up defenses against them. He should not depreciate the estate, but seek to collect its assets, leaving its apparent debtors to present their defenses, if any.

2. SAME—*Duty in Relation to Bad Debts.*—An administrator is not required to waste the estate in attempts to collect bad debts, or where it is clear a perfect defense exists, but he must act in the utmost good faith to the estate.

**Administration of Estates.**—Appeal from the Circuit Court of Lee County; the Hon. JAMES S. BAUME, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed April 6, 1900.

C. H. WOOSTER and MORRISON & BETHEA, attorneys for appellant.

BARGE & BARGE, attorneys for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Francis Egan, administrator of the estate of Helen Egan, deceased, filed his final report as such in the County Court of Lee County. Mima Barrie Clark, a daughter and heir at law of deceased, filed objections thereto, only one of which is involved in this appeal. That objection was that the administrator had not charged himself with a certain judgment for $2,580.64, and interest thereon, recovered by Elizabeth Barrie against Alfred H. Egan and Michael Egan in the Circuit Court of Lee County, and afterward assigned by Elizabeth Barrie to Helen Egan. The County Court overruled the objection. Mrs. Clark appealed to the Circuit Court, where, on a hearing, the objection was sustained, and the administrator was ordered to proceed to collect the judgment. From that order the administrator prosecutes this appeal.

In 1872 Helen Barrie was a widow, having children, and among them appellee and Elizabeth Barrie; and Michael Egan was a widower, having children, and among them

Alfred H. Egan.  In that year Michael Egan and Helen Barrie were united in marriage.  Before that marriage Michael conveyed a number of tracts of land and town lots owned by him to his children.  In 1877 Alfred borrowed $1,700 of his stepmother, and gave therefor a promissory note signed by himself as principal, and by his father, Michael, as surety.  Thereafter Mrs. Egan assigned the note to her daughter Elizabeth Barrie, and a suit in the name of the latter was brought thereon against Michael and Alfred in the Circuit Court of Lee County, and the judgment here in controversy was rendered against the defendants by default. Afterward Elizabeth Barrie, being mortally ill, assigned said judgment to her mother, Helen Egan.  Mrs. Egan afterward died.  Francis Egan, brother of Michael Egan, was appointed administrator.  He did not collect this judgment.  The main question presented is whether he should be compelled to do so.

The administrator resists solely on the ground that before the suit was brought in the name of Elizabeth Barrie upon the note, the note itself was paid by the conveyance of a certain tract of forty-three acres of land, called " the Wasson forty."  This was one of the tracts which Michael deeded to his children before his second marriage.  In 1882 and 1883 the children of Michael Egan deeded several of said tracts to James Taylor (a relative) and Taylor and his wife made two or more deeds of said tracts to Helen Egan. By one of these instruments, executed in January, 1883, Taylor and his wife conveyed the Wasson forty to Helen Egan; and it is claimed by the administrator that the Wasson forty was conveyed to Helen Egan in payment of the $1,700 note, but that Mrs. Egan afterward caused the note to be put in judgment in her daughter's name in order that it might be collected from Alfred, the principal, for the benefit of Michael, her husband, the surety.

It is the duty of an administrator to try to collect debts apparently due the estate, and not to resist their collection and set up defenses against them.  He should not depreciate the estate committed to his trust, but should seek to preserve and collect its assets, leaving to those who seem to

be its debtors the task of bringing forward and proving
their defenses, if any they have. (2 Woerner's American
Law of Administration, Sec. 324.) The administrator is
not required to waste the estate in attempts to collect bad
debts, or demands to which it is clear a legal defense exists,
but he must act in the utmost good faith to the estate.
This judgment appeared upon its face to be a valid demand
in favor of the estate, and the administrator had within
his control property sufficient to at least partially pay it.
The claim that no debt was in existence when the suit was
brought and judgment was rendered came from interested
sources, and the administrator should have tried to enforce
the judgment. The court below properly directed him to
do so.

When we first decided this case we held the court below
erred in further deciding the debt was not paid, and requir-
ing the administrator to apply upon the judgment the funds
in his hands as Michael Egan's distributive share of Helen
Egan's estate, because Michael Egan was not in court to
defend his rights. Upon further consideration we conclude
that position untenable. Section 112 of the administration
act requires notice to the heirs before the County Court acts
upon a final report of an administrator. As the County
Court acted upon this final report, the presumption is that
the heirs, including Michael Egan, had the notice without
which the County Court was not authorized to act. If he
had notice, he had the opportunity to appear and protect
his interests if he desired. Indeed, appellant in his brief
says, " the issues may be treated as though Michael and A.
H. Egan were the actual parties in the case." The grounds
upon which we originally held a portion of the order
appealed from erroneous were therefore untenable. As the
judgment was entered by us during the last vacation we
conclude it is within our power to correct and modify it at
this term.

Did the court below rule correctly in directing the appli-
cation of Michael Egan's distributive share of the estate as
a payment upon the judgment? In such matters the
County Court acts upon equitable principles. Would equity

Egan v. Clark.

grant Michael Egan relief against this judgment? The Wasson forty was conveyed to Helen Egan in January, 1883, and the alleged payment was by that conveyance. On May 27, 1885, Elizabeth Barrie brought suit against Michael and Alfred H. Egan upon the note. Summons was served upon defendants on May 30, 1885. They did not defend. On April 30, 1886, judgment against them was entered for the amount of the note. They had their day in court, when all the facts were fresh in the memory of all parties, and when all parties, who knew the facts, were living. They did not avail themselves of their legal right to plead and prove that the note sued upon had been paid. Three children of Michael Egan by his first wife, and his brother, the administrator, now testify to conversations with Helen Egan, which, if correctly understood and reported, tend strongly to show the deed to her of the Wasson forty, paid the note in question. On the other hand James Taylor (through whom the title passed to Helen Egan) and his wife testify the Wasson forty was conveyed to Mrs. Egan in payment of other specified debts of Michael and Alfred. Even if equity would interfere merely because of payment before suit brought, it would be very dangerous to allow a judgment to be made void upon such proof. Conversations had years before may easily be partially forgotten or misreported. The note was not surrendered when the alleged payment was made. The failure to defend is inconsistent with the supposed payment. The evidence as to whether the Wasson forty was deeded to pay this note or other debts is conflicting. The testimony of the administrator is inconsistent with a letter he wrote in 1896, in which he treated the judgment as valid and binding upon Michael Egan. The judgment was recovered in 1886. This attack upon it seems not to have been made till 1898, after Mrs. Egan's death. *Laches* should now prevent a resort to equity to defeat the judgment. But a court of equity will not enjoin the collection of a judgment merely upon proof the debt was paid before the suit was brought. It must further appear that defendants in the judgment were prevented by fraud, accident or mistake, from plead-

ing the payment as a defense in that action. There is no such proof in this case. Two witnesses testify to conversations of Helen Egan, tending to show she devised the plan to put the note in judgment in order to compel Alfred to pay it for the benefit of Michael, but there is no proof either Michael or Alfred were parties to the plan, or were in any way misled, deceived or prevented from pleading and proving the payment. We are of opinion a court of equity would not interfere in behalf of Michael or Alfred H. Egan to set aside the judgment, upon the proofs in this record. There is therefore no equitable reason why it should not be enforced. Our former judgment will accordingly be so modified as to wholly affirm the order of the Circuit Court. Order affirmed.